UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAADELDIN DEAN EL-SEDFY,<br>    Plaintiff,<br>        v.<br>WHATSAPP INC., et al.,<br>    Defendants. | Case No. 16-cv-04056-JCS<br><br>**ORDER GRANTING MOTION TO DISMISS**<br>Re: Dkt. No. 19 |

## I. INTRODUCTION

Plaintiff Saadeldin (Dean) El-Sedfy, pro se, brings this action alleging that Defendants WhatsApp Inc. and Facebook, Inc. infringed El-Sedfy's copyright in software that allows users to send and receive encrypted text messages on mobile devices. Defendants now move to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court finds the motion suitable for resolution without oral argument and hereby VACATES the hearing previously set for November 4, 2016 at 10:30 AM. *See* Civ. L.R. 7-1(b). **The case management conference set for November 4, 2016 is CONTINUED to 2:00 PM the same day.**

For the reasons discussed below, Defendants' motion is GRANTED, and the Complaint is DISMISSED with leave to amend. If El-Sedfy is aware of similarities between his and Defendants' software that fall within the scope of copyright protection as discussed below, he may file an amended complaint alleging such infringement **no later than November 30, 2016**.[1]

/ / /

/ / /

/ / /

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. Allegations of the Complaint

#### 1. El-Sedfy's Work and Copyright

El-Sedfy, a retired Canadian aerospace engineer who later worked a consultant and software developer, began developing security and text encryption software in 1999 and created a Canadian sole proprietorship, SR&ED Engineering Inc., for that purpose. Compl. (dkt. 1) ¶ 4. El-Sedfy developed three products: (1) AntiSpy SMS, which provided end-to-end encryption of SMS text messages; (2) BusyTeam, which employs the same technology in the context of collaboration among business professionals; and (3) e_ScutSheet, which is "structurally identical" to BusyTeam but adapted for use in hospital settings. *Id.* ¶¶ 4(a)–(c).

El-Sedfy's early work in software development, beginning in 1999, "produced several applications for the Windows operating system." *Id.* ¶ 8. In the course of that work he "arrived at an expression of the idea relating to encrypting messages, data and text being transmitted over the internet World Wide Web." *Id.* ¶ 9. By 2010, El-Sedfy had "further developed the structure, sequence and organization of the originally developed expressions . . . to become suitable for the applications running on Mobile Devices," originally those running the Android operating system. *Id.* ¶ 10. He released his AntiSpy SMS product in July of 2012 through the Samsung and Google mobile application stores. *Id.* On August 1, 2012, El-Sedfy (through his SR&ED sole proprietorship) obtained a certificate of registration from the United States Copyright Office for work titled "Universal algorithms, process and source code to enable compatible sending and retrieval of encrypted SMS messages by mobile devices running different operating systems such as Apple OS x. [sic] Android and Windows." *Id.* ¶ 10 & Ex. A (certificate for copyright registration number TX 5-579-575). El-Sedfy's copyright application "included the first version of the source code," which he authored in 2000. *Id.* ¶ 11.

According to El-Sedfy's Complaint, "[t]he copyright protected expression can be briefly described as follows:"

> (a) Sender Personal Identity Key (SPIK, which is his/her e_DNA) is dynamically generated/computed and verified automatically on the device at the initiation of the application.

2

> (b) The recipient must be selected, from the available contacts list, prior to composing the SMS message in order to compute the Recipient's Personal Identity Key (RPIK, which is his/her e_DNA).
>
> (c) Upon invoking the Send command, the Recipient's Personal Identification Key (RPIK) is used in conjunction with the encryption algorithm to produce the encrypted text. There are several encryption algorithms available in the public domain. The Plaintiff's developed his own encryption, which is Copyright protected.
>
> (d) The encrypted text is then added to both public key and the RPIK. The newly produced cryptographic message is submitted to the SMS sending algorithm and the whole is sent. This phase is the most important part of the expression as it allows the idea of Secure end-to-end messaging to be achieved. The message structure (in terms of inclusion of the RPIK and public Key, i.e. the electronic DNAs) is very important as it will cause the success or failure of Safe, Verifiable and Secure decryption processes to be performed on the recipient's device. The aforementioned solution is not a Scéne á faire as there are many other solutions.
>
> (e) When the cryptographic message is received, the application will extract the Public Key and the RPIK to compare them to the local stored Keys. They must be identical for the decryption to be performed.

*Id.*

### 2. Defendants' Products

Defendant WhatsApp provides an eponymous product that allows users to send messages among various mobile and desktop platforms. *Id.* ¶ 5. WhatsApp is currently a wholly owned subsidiary of Defendant Facebook. *Id.* Facebook produces a social networking platform available through its website and mobile applications. *Id.* ¶ 6. Users interact in various ways, including through Facebook's "News Feed" feature. *Id.* Facebook also offers other products, which El-Sedfy alleges it obtained "by way of plagiarism, or acquisition, or allegedly development," including: (1) Instagram, a mobile application for editing and sharing photographs and videos; (2) Messenger, a mobile and web-based messaging application that allows users to communicate with one another and businesses to engage with customers; (3) "WhatsApp Messenger, which is a fast, simple and reliable mobile messaging application that is used by people around the world and is available on a variety of mobile platforms"; and (4) Oculus, a virtual reality platform. *Id.* ¶ 7.

WhatsApp announced its introduction of "end-to-end encrypted SMS messaging" in April of 2016. *Id.* ¶ 12. Facebook has announced in a white paper that it is testing end-to-end

3

encryption. *Id.*

### 3. Claim of Infringement

The sole claim of El-Sedfy's Complaint is copyright infringement in violation of 17 U.S.C. § 106. *See id.* ¶¶ 13–19. Other than Defendants' announcements regarding encryption discussed above, the only allegations regarding Defendants' purported wrongful conduct are as follows:

> 14. Without consent, authorization, approval, or license, the Defendants knowingly, willingly, and unlawfully copied, prepared, published, and distributed Plaintiff's copyrighted work, portions thereof, or derivative works and continues [sic] to do so.
>
> 15. On information and belief, the Defendants direct and induced infringements are and have been knowing and willful.

*Id.* ¶¶ 14–15. El-Sedfy has "attempted several times to contact the Defendants to arrive at a resolution" of what he perceives as a violation of his copyright. *Id.* ¶ 12 & Exs. F–H. In one such communication, a letter that El-Sedfy sent to Facebook CEO Mark Zuckerberg, El-Sedfy included the following explanation of his position:

> As you are aware, the copyrightable component aspect of the software are those relating to Structure, Sequence and Organization. I trust that you would agree that it is very easy to prove the existence, of those three, aforementioned elements in two SEEMINGLY different pieces of software application of End to End SMS Encryption/Decryption, regardless if even the language they may be express, or written in. I trust that you agree that a computer language is just a symbolic venue to express an idea.

*Id.* Ex. H.

### B. Arguments

Defendants argue that El-Sedfy's Complaint must be dismissed based on the "fundamental tenet of copyright law that protection only extends to an author's particular original expression of an idea fixed in a tangible medium, and not to the idea itself." Mot. (dkt. 19) at 2 (citing 17 U.S.C. § 102). According to Defendants, El-Sedfy alleges only that Defendants used the *idea* of end-to-end encryption of SMS messages, but does not allege "that Defendants copied *any* aspect of [El-Sedfy's] source code or graphical user interface, either literally or non-literally, much less an allegation that Defendants copied protectable expression in [El-Sedfy's] work." *Id.* Citing Ninth Circuit precedent, Defendants argue that a plaintiff claiming copyright infringement must

specifically allege "that the alleged infringer has copied a protectable aspect of the claimed work, *or* that the alleged infringer had access to the copyrighted work and that the expression of the copyrighted work—not just its general concept or idea—is substantially similar to the alleged infringing work." *Id.* at 4 (citing *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994)). Similarly, Defendants suggest that El-Sedfy's Complaint improperly attempts to assert copyright protection of "functionality," which in fact falls within the domain of patent protection, not copyright. *See id.* Defendants contend that El-Sedfy has not alleged: (1) direct or "literal" copying of any protectable work, *id.* at 5–6; (2) access by Defendants to El-Sedfy's work, *id.* at 6–7; or (3) substantial similarity between El-Sedfy's and Defendants' products, beyond merely the use of end-to-end encryption, *id.* at 7.

El-Sedfy's opposition brief relies in large part on authority describing the liberal pleading standard applied by the federal courts before the Supreme Court's decisions in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See* Opp'n (dkt. 20) at 5–7 (citing, *e.g.*, *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 568 n.15 (1987)). According to El-Sedfy, a plaintiff without access to a defendant's source code cannot be expected "to allege literal Copyright Infringement of his source code," at least "where there are [sic] other overwhelming evidence, obvious to a Competent Software Engineer, in support of Copyright Infringement by the Defendants." *Id.* at 2−3. El-Sedfy also makes much of the fact that his Complaint repeats the phrase "expression of the idea," and argues that such language defeats Defendants' argument that his claim improperly seeks to assert copyright protection of the idea itself. *See id.* at 4–5. According to El-Sedfy, paragraph 11 of the Complaint—which summarizes the functionality of his encryption software—describes that "expression" and thus "successfully define[s] the legal basis of Non-Literal Software Copyright Infringement," and paragraph 12—which alleges that WhatsApp introduced end-to-end encryption in its product and that Facebook released a white paper on the subject—"provides the proof of the Infringement alleged." *Id.* at 4–6, 9.

El-Sedfy's opposition brief contends that the arguments in Defendants' motion are not

1  grounds to dismiss, but rather reasons that El-Sedfy should be allowed to obtain WhatsApp's
2  source code through discovery. *Id.* at 7, 8–9. El-Sedfy also makes clear that he does not allege
3  infringement of the graphical user interface of his software, which, according to El-Sedfy, courts
4  have long held to be outside the scope of copyright protection. *Id.* at 7–8. El-Sedfy argues that
5  Defendants' allusion to patent law amounts to an "admi[ssion] that they have infringed on some of
6  [his] rights" and an attempt to dismiss the case based on the "formality" of whether such rights are
7  properly construed as copyright or patent protection—according to El-Sedfy, his software as
8  described in paragraph 11 of the Complaint qualifies for protection under either doctrine, and he
9  may properly bring this action for copyright infringement. *Id.* at 2.

10  Defendants' reply brief focuses on the argument that, post-*Twombly*, allegations that
11  support the mere *possibility* of infringement are not sufficient to state a claim or to grant a plaintiff
12  discovery, and that El-Sedfy's Complaint does not *plausibly* allege any actionable infringement.
13  *See generally* Reply (dkt. 21). According to Defendants, the description of the software at
14  paragraph 11, on which El-Sedfy relies as a description of the structure, sequence, and
15  organization of the expressive work at issue, in fact only describes the functionality of the
16  software, and functionality is not eligible for copyright protection. *Id.* at 2–3. Defendants also
17  deny that their motion admits any infringement, either of copyright or of patent rights, *id.* at 4 n.5,
18  and contend that El-Sedfy's assertion in his opposition that neither party had legal access to the
19  other's source code in fact supports Defendants' argument that El-Sedfy cannot state a claim for
20  non-literal copyright infringement, *id.* at 2.

21  **III. ANALYSIS**
22  **A. Legal Standard**
23  A complaint may be dismissed for failure to state a claim on which relief can be granted
24  under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss
25  under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp.*
26  *Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage
27  is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading
28  which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

Where the complaint has been filed by a pro se plaintiff, as is the case here, courts must "construe the pleadings liberally . . . to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). "A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203−04 (9th Cir. 1988) (per curiam)). Further, when it dismisses the complaint of a pro se litigant with leave to amend, "the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Id.* (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). "Without the benefit of a statement of deficiencies, the pro se litigant will likely repeat previous errors." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)).

7

**B. El-Sedfy Fails to State a Plausible Claim for Copyright Infringement**

"To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Ser. Co.*, 499 U.S. 340, 345 (1991) (citation omitted). The first element requires that "a work must be original to the author," meaning "that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id.* "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). To the contrary, "'every idea, theory, and fact in a copyrighted work becomes instantly available for public exploitation at the moment of publication'; the author's expression alone gains copyright protection." *Golan v. Holder*, 132 S. Ct. 873, 890 (2012) (quoting *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003)).

The Ninth Circuit has recognized three elements of software that can be eligible for copyright protection: "(1) the software's 'literal elements' such as the actual source and object codes; (2) the software's 'individual non-literal elements' such as discrete visual and audible components; and (3) the software's 'dynamic non-literal elements' such as the real time experience and operation of the software." *NNG, KFT. V. AVA Enters., Inc.*, No. 2:14-cv-00220-ODW(AJW), 2015 WL 5442725, at *3 (quoting and summarizing *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 942, 952–54 (9th Cir. 2010)). The Ninth Circuit has also set forth the process for considering such infringement claims:

> (1) The plaintiff must identify the *source(s)* of the alleged similarity between his work and the defendant's work.
>
> (2) Using analytic dissection, and, if necessary, expert testimony, the court must determine whether any of the allegedly similar features are protected by copyright. . . . [U]nprotectable ideas must be separated from potentially protectable expression; to that expression, the court must then apply the relevant limiting doctrines in the context of the particular medium involved, through the eyes of the ordinary consumer of that product.

8

> (3) Having dissected the alleged similarities and considered the range of possible expression, the court must define the scope of the plaintiff's copyright . . . .

*Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994).

El-Sedfy's assertion that "Defendants knowingly, willingly, and unlawfully copied, prepared, published, and distributed Plaintiff's copyrighted work, portions thereof, or derivative works," Compl. ¶ 14, is "a formulaic recitation of the elements of a cause of action" and thus not, in itself, sufficient to state a claim. *See Iqbal*, 556 U.S. at 678. The Court must therefore examine the factual allegations of the Complaint to determine whether they plausibly support a conclusion that actionable infringement occurred.

The Court's analysis begins with the "source of the alleged similarity." *See Apple Computer*, 35 F.3d at 1443. Here, El-Sedfy's Complaint does not identify any aspect of his software's source code that Defendants allegedly copied. Nor is there any basis to infer that such copying occurred, given that the Complaint does not allege that Defendants had access to El-Sedfy's source code, and El-Sedfy's opposition makes clear his position that neither party had access—at least *legal* access—to the other's source code. Opp'n at 2; *see also Apple Computer*, 35 F.3d 1435 ("Copying may be shown by circumstantial evidence of access and substantial similarity of both the general ideas and expression between the copyrighted work and the allegedly infringing work."). The Complaint therefore does not state a plausible claim of infringement of El-Sedfy's software's "literal elements," i.e., its source code.

El-Sedfy's opposition indicates that he seeks to pursue a theory of infringement of non-literal software elements. *See* Opp'n at 5 ("The Complaint, therefore, has successfully defined the legal basis of Non-Literal Software Copyright Infringement."). As described in the Complaint, the only overlap between his software and Defendants' software is the use of end-to-end encryption for messages. *See* Compl. ¶ 12. El-Sedfy also suggests, although his Complaint does not explicitly allege, that Defendants' software follows the same steps to provide such encryption. *See id.* ¶ 11 (setting forth the basic steps El-Sedfy's software uses). Despite El-Sedfy's arguments to the contrary, *see* Opp'n at 3−5, the Court agrees with Defendants that paragraph 11 of El-Sedfy's Complaint describes a *method*, not a creative expression. The fact that the description consists of

9

a relatively short summary rather than a detailed explanation of the technology is of no consequence. *Cf.* Opp'n at 5 (arguing that "describe[ing] a method or system, would require many pages and not one paragraph"). The sequence of steps described in the Complaint does not resemble the sort of "non-literal elements" that courts have held to be subject to copyright. *Cf., e.g.*, *MDY Indus.*, 629 F.3d at 942−43 (discussing "individual non-literal elements" consisting of "visual and audible components" of a computer game and "dynamic non-literal elements" consisting of the player's "real-time experience"). Indeed, El-Sedfy's letter to Facebook CEO Mark Zuckerberg strongly suggests that El-Sedfy's theory of infringement is based on a similarity of ideas, not of the particular expression of that idea. *See* Compl. Ex. H ("I trust that you agree that a computer language is just a symbolic venue to express an idea."). El-Sedfy cites no authority for extending copyright protection to the alleged similarities between his and Defendants' use of end-to-end encryption.

"Monopoly protection for such a method 'can only be secured, if it can be secured at all, by letters-patent,'"[2] and "is not eligible for protection by copyright." *Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1039−40 (9th Cir. 2015) (quoting *Baker v. Selden*, 101 U.S. 99, 105 (1879)) (holding that a "system" of yoga poses and breathing exercises was not copyrightable). Unless independently protected by patent rights, El-Sedfy's ideas and methods for encryption of messages "bec[ame] instantly available for public exploitation at the moment of publication." *See Golan*, 132 S. Ct. at 890 (citation omitted). The Court therefore holds that even if the Complaint could be construed as alleging that Defendants' software follows the same steps that El-Sedfy describes of his own software, no portion of the alleged similarity between the parties' products is protected by copyright. Accordingly, El-Sedfy's claim for copyright infringement must be dismissed.

## IV. CONCLUSION

For the reasons discussed above, Defendants' motion is GRANTED, and the Complaint is DISMISSED. If El-Sedfy can identify any similarity between his own software and Defendants'

---

[2] El-Sedfy does not bring a claim for patent infringement, nor does he allege that he holds a patent for his software.

10

software that is protected by copyright—i.e., a similarity in expression that is not a process, method, or idea—he may file an amended complaint alleging such infringement **no later than November 30, 2016**. Any such amended complaint must include the caption and civil case number used in this Order (16-cv-4056-JCS) and the words FIRST AMENDED COMPLAINT on the first page. Because an amended complaint completely replaces the previous complaint, any amended complaint may not incorporate claims or allegations of El-Sedfy's original Complaint by reference, but instead must include all the claims El-Sedfy wishes to present and all of the defendants he wishes to sue. *See Ferdik*, 963 F.2d at 1262.

El-Sedfy, who is not represented by counsel, is encouraged to consult with the Federal Pro Bono Project's Legal Help Center in either of the Oakland or San Francisco federal courthouses for assistance if he intends to file an amended complaint. The San Francisco Legal Help Center office is located in Room 2796 on the 15th floor at 450 Golden Gate Avenue, San Francisco, CA 94102. The Oakland office is located in Room 470-S on the 4th floor at 1301 Clay Street, Oakland, CA 94612. Appointments can be made by calling (415) 782-8982 or signing up in the appointment book located outside either office, and telephone appointments are available. Lawyers at the Legal Help Center can provide basic assistance to parties representing themselves but cannot provide legal representation.

**IT IS SO ORDERED.**

Dated: October 31, 2016

JOSEPH C. SPERO
Chief Magistrate Judge